# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

JOE BALTAS,                                    :
      Plaintiff,                          :    CIVIL ACTION NO.
                            :    3:24cv1487 (VAB)
      v.                                   :
                            :
DAVID SNYDER, *et al*, in their individual     :
and official capacities,                       :
      Defendants.                          :

# INITIAL REVIEW ORDER

Joe Baltas ("Plaintiff"), a Connecticut Department of Correction ("CT DOC") inmate, is now incarcerated at the High Security Center ("HSC") of Rhode Island Department of Correction ("RI DOC").[1] He has filed a civil rights Complaint under 42 U.S.C. § 1983 against six CT DOC officials—Commissioner Angel Quiros, Director of Offender Classification and Population Management ("OCPM") David Snyder, Correctional Counselor Supervisor Jaclyn Osden, Correctional Counselor Sara Skribiski, Director of Security Antonio Santiago, and Deputy Commissioner Mulligan ("CT DOC Defendants")—and Connecticut Attorney General William Tong and Assistant Attorney General Terrance O'Niell ("CT AG Defendants"). *See* Compl., ECF No. 1. Mr. Baltas sues each Defendant in their individual and official capacities.

Mr. Baltas has filed a 198-page complaint consisting of 247 factual allegations and 24 causes of action asserting violation of his rights under the First Amendment, Fourth Amendment, Sixth Amendment, Eighth Amendment, Fourteenth Amendment, Religious Land Use and Incarcerated Persons Act ("RLUIPA"), American with Disabilities Act ("ADA"), Rehabilitation

---

[1] The RI DOC website states that HSC is a supermax facility, which houses inmates who require close custody and control." *See* https://doc.ri.gov/more-resources/facilities/high-security-center.

Act ("RA"), the Interstate Correction Compact ("ICC"), federal conspiracy statutes, and state law.[2]

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity, officer, or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

For the reasons stated herein, the case shall proceed on Mr. Baltas's claims for (1) First Amendment retaliation against Mr. Baltas by transferring him to HSC against the CT DOC Defendants (David Snyder, Jaclyn Osden, Sara Skribiski, Antonio Santiago, William Mulligan and Angel Quiros) and CT AG Defendants (William Tong and Terrance O'Niell) in their individual capacities; (2) Fourteenth Amendment procedural due process classification review violation against CT DOC Defendants in their individual and official capacities; (3) Fourteenth Amendment equal protection violation against the CT DOC Defendants and CT AG Defendants in their individual capacities and against the CT DOC Defendants in their official capacities, except as to any "class of one" theory; (4) violation of 42 U.S.C. § 1981 against the CT DOC Defendants and CT AG Defendants in their individual capacities and against the CT DOC

---

[2]  The Court will not address the plausibility of claims under Connecticut law because this initial review for purposes of 28 U.S.C. § 1915A is limited to federal law claims. These claims may be addressed later by the defendants in a motion to dismiss or a motion for summary judgment.

Defendants in their official capacities; (5) First Amendment and RLUIPA violations based on religious exercise deprivations against the CT DOC Defendants and CT AG Defendants in their individual capacities and against the CT DOC Defendants in their official capacities; (6) deprivation of his constitutional right to court access against the CT DOC Defendants and CT AG Defendants in their individual capacities and the CT DOC Defendants in their official capacities; (7) Sixth Amendment effective assistance of counsel and speedy trial violations against the CT DOC Defendants and CT AG Defendants in their individual and the CT DOC Defendants in their official capacities; and (8) Eighth Amendment deliberate indifference to medical and mental health needs against the CT DOC Defendants in individual and official capacities.

All other claims are **DISMISSED** without prejudice.

If Mr. Baltas wishes to file an Amended Complaint, he must do so by **March 14, 2025**, consistent with this Initial Review Order below.

The CT DOC Defendants are instructed to respond to Mr. Baltas's emergency motion regarding his requests for injunctive relief on or before **March 14, 2025.**

## I.    Factual Background

Mr. Baltas has filed several lawsuits in this Court against the DOC. *See* Compl. at 12-13. During formal and informal negotiations in December 2022, he allegedly informed Defendants Snyder, Osden, Mulligan, Quiros, Tong and O'Neill that his incarceration in certain states, particularly Rhode Island, posed a threat to his safety and was not acceptable. *Id.* at 26-27. He allegedly noted that Rhode Island incarceration posed a threat to his safety because (1) he has a family association with the Diablos Motorcycle Club ("Diablos") and there are many rival clubs

to the Diablos in Rhode Island, including one that nearly killed him as a child; (2) the "widely reported corruption within the Rhode Island Department of Correction ("RI DOC") and unconstitutional conditions and abuses that occurred within the RI DOC facilities; and (3) the widely reported high number of inmate fatalities and high suicide rate. *Id.* at 27.

Mr. Baltas claims that Defendants Snyder, Osden and the CT AG Defendants represented that they would not be able to facilitate a two for one or three for one inmate exchange in order to secure Mr. Baltas's placement in one of his preferred locations of Maine, Iowa or Delaware. *Id.* at 27.

Starting in January 2023, the CT DOC and CT AG Defendants allegedly negotiated with the RI DOC to transfer Mr. Baltas to RI DOC. *Id.* at 28. Mr. Baltas claims the CT DOC and CT AG Defendants conferred with each other and RI DOC and the RI Attorney General to negotiate Mr. Baltas's transfer under the Interstate Corrections Compact ("ICC") to RI DOC. *Id.* at 28. Mr. Baltas claims Defendants planned to harm Mr. Baltas through unconstitutional conditions and deprivations of his federal rights while being housed within RI DOC. *Id.* He asserts that RI DOC agreed to take such actions and house Mr. Baltas, while Connecticut DOC agreed to accept four inmates from RI DOC. *Id.* at 29.

On December 6, 2023, Mr. Baltas allegedly was transported to the intake center in Rhode Island, where he was searched, photographed and fingerprinted, and then transported to the RI DOC supermax prison, HSC. *Id.* at 30. Mr. Baltas allegedly was escorted to the HSC Disciplinary Confinement, the harshest housing unit at HSC and RI DOC, and then placed in the Restorative Housing Program ("RHU") step 1, the most restrictive phase of the administrative segregation status in RI DOC. *Id* at 31-32. He allegedly was labeled as a Security Risk Group

("SRG") 1, which is the highest and most restrictive status for SRG individuals. *Id.* at 32. Mr. Baltas allegedly was also placed on Special Management status upon arrival at RI DOC, a status that did not otherwise exist in RI DOC and that subjected Mr. Baltas to numerous restrictions. *Id.*

During his RI confinement, Mr. Baltas has allegedly been subjected, *inter alia,* to excessive force; excessive strip and cell searches; isolation; solitary confinement; twenty-four confinement; unsanitary and/or unhealthful conditions, including inadequate ventilation; full restraints; inability to access to the courts, legal materials transported by CT DOC, digital or video materials relevant to his cases in Connecticut, or legal resources at RI DOC; and deprivations of medical care, exercise, visitation, mail, telephone communication, sleep, adequate food, educational and rehabilitation programming, religious practice, and property. *Id.* at 33-55.

Mr. Baltas claims that he has been subjected to discipline without due process while in RI DOC custody; that he is not afforded the same level of process for his disciplinary issues in RI DOC; and that the discipline imposed upon him would be proscribed by Connecticut DOC. *Id.* at 55-57.

Mr. Baltas also claims that RI DOC provides Defendants Snyder, Osden and Skribiski bi-weekly updates about his RI DOC confinement, and these updates are forwarded to Santiago, Mulligan, Quiros, O'Niell and Tong. *Id.* at 58. In addition, he asserts that the RI Attorney General's Office is in contact with all Defendants at least once a month. *Id.* at 59. Mr. Baltas has also sent correspondence and grievances concerning the deprivations of his RI confinement to the CT DOC and CT AG Defendants. *Id.* at 59-60. Defendants allegedly have not taken any action to investigate the deprivations raised in Mr. Baltas's grievances or correspondence. *Id.* at

60-61. Nor have they granted his request for removal from RI DOC confinement. *Id.* at 61.

The Court will provide additional discussion of Mr. Baltas's allegations in its discussion of Mr. Baltas's claims.

The New England ICC

Mr. Baltas's transfer to RI DOC allegedly was made under the New England ICC, Connecticut General Statutes § 18-102. Article IV provides, in relevant parts :

> (c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state; provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

> (d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact, including a conduct record of each inmate, and certify said record to the official designated by the sending state, in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

> (e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, a court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that *"[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## III.    DISCUSSION

Mr. Baltas asserts claims under federal law for violation of his First, Fourth, Fifth, Sixth, and Eighth Amendment rights, and under civil conspiracy and civil rights statutes.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In *Tangreti v. Bachmann*, the Second Circuit clarified the pleading standard applicable to supervisory defendants in cases concerning alleged violations of constitutional rights. Joining other Courts of Appeals that have addressed the issue, the Second Circuit now

7

holds that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' ... The violation must be established against the supervisory official *directly*." *Tangreti*, 983 F.3d 609, 618 (2d Cir. 2020) (emphasis added) (quoting *Iqbal*, 556 U.S. at 676). To the extent Mr. Baltas asserts claims against supervisory officials, he must allege facts reflecting that a defendant had direct personal involvement in the violation. Thus, the Court will dismiss claims against a supervisory defendant where Mr. Baltas has failed to satisfy the standard set forth in *Tangreti*.

The Court first considers whether Mr. Baltas has alleged any plausible claims against any Defendants in their individual capacities.

### A. The First Amendment Retaliatory Transfer Claim

The Second Circuit has instructed district courts to view "prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)). Retaliation claims "stated in wholly conclusory terms" are insufficient. *Id.* (internal quotation marks and citations omitted). To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan*, 794 F.3d at 294 (internal quotation marks and citation omitted).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a

prison grievance. *See id.* ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." (internal quotation marks and citations omitted)). Mr. Baltas has satisfied the first prong of his retaliation claim because his allegations indicate that he filed numerous legal actions against the Connecticut DOC officials. *See* Compl. at 12–13.

As to the second prong, the Second Circuit has defined adverse action as retaliatory conduct that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (internal quotation marks and citation omitted). Mr. Baltas has also sufficiently alleged the second prong, that he sustained adverse action on the basis of his transfer to an institution in Rhode Island. *See Smith v. Levine*, 510 F. App'x 17, 21 (2d Cir. 2013) ("We had stated, at least as early as 1998, that, while '[a] prisoner has no liberty interest in remaining at a particular correctional facility,' prison authorities 'may not transfer an inmate in retaliation for the exercise of constitutionally protected rights.'" (quoting *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir. 1998))).

As to the third prong, causation may be demonstrated, among other ways, by showing that the protected speech and the adverse employment action occurred close in time. *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("A plaintiff may establish causation indirectly by showing his speech was closely followed in time by the adverse employment decision."). Mr. Baltas has also alleged facts that, at least, raise an inference of a causal connection because his interstate transfer occurred while all Defendants were aware of his multiple cases against DOC employees.

Accordingly, Mr. Baltas's claim of First Amendment retaliation may proceed against the CT DOC Defendants and CT AG Defendants in their individual capacities for further development of the record.[3]

### B.    The Eighth Amendment Transfer Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. VIII. It is applicable "to States through the Due Process Clause of the Fourteenth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) (citing *Robinson v. California*, 370 U.S. 660, 666–67 (1962)). But, an inmate has no Eighth or Fourteenth Amendment right to be confined at a particular prison facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules"); *McCarthy v. Teta*, 101 F.3d 108 (2d Cir. 1996) ("McCarthy's due process claim fails because he does not have a liberty interest in a transfer to a federal prison or a different state prison system. Prison transfers do not implicate a liberty interest in the absence of state law suggesting otherwise."); *Andrews v. Semple*, No. 3:17-cv-1233 (SRU), 2017 WL 5606740, at *4 (D. Conn. Nov. 21, 2017) (dismissing due process claim that prison officials refused to transfer inmate to prison facility of his choice, Garner Correctional Institution, because "he has no constitutionally protected right to be housed" at Garner or any other facility); *Remillard v. Maldonado*, No. 3:15-CV-1714 (SRU), 2016 WL 3093358, at *3 (D. Conn. June 1, 2016) ("The Eighth Amendment does not require the

---

[3] The Court's determinations regarding any plausible claims in this initial review order are without prejudice to Defendants' filing a motion to dismiss.

least restrictive housing for a prisoner."); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.").

Under the Eighth Amendment, prison officials are, however, required to take reasonable measures to guarantee the safety of inmates and to protect them from known harm. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) ("The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials . . . must 'take reasonable measures to guarantee the safety of the inmates[.]'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984))); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (noting that prison officials have a duty, under the Eighth Amendment, "'to protect inmates from violence at the hands of other inmates'" (quoting *Farmer*, 511 U.S. at 833)). A plaintiff must, however, demonstrate both an objective and a subjective element under the Eighth Amendment. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id.*

To meet the subjective element, an inmate must allege that the prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id*. at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

Mr. Baltas alleges that during negotiations that commenced in December 2022, he informed the CT DOC Defendants and the CT AG Defendants that incarceration in Rhode Island posed a risk to his safety because (1) he has a family association with the Diablos and there are rival clubs to the Diablos in Rhode Island, including one that nearly killed him as a child; (2) widely reported corruption within RI DOC, abuse of inmates and solitary confinement and unconstitutional conditions; and (3) widely reported high inmate fatality and suicide rates within RI DOC. Compl. at ¶¶ 81–84.

Nonetheless, Mr. Baltas does not allege facts to suggest he communicated any specific threat to his safety and wellbeing if transferred to HSC in December 2023. District courts have held that "an inmate's communications about his 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Anselmo v. Kirkpatrick*, No. 9:19-cv-0350, 2019 WL 2137469, at *4 (N.D.N.Y. May 16, 2019). Thus, Mr. Baltas's allegations are not sufficient to support a claim that any Defendants acted with conscious disregard to Mr. Baltas's safety and wellbeing by deciding to transfer him in December 2023 to HSC.

Accordingly, Mr. Baltas's Eighth Amendment claims arising from the decision to transfer him to HSC in December 2023 will be dismissed as not plausible.

### C.    The Fourth Amendment Property Claim

Under the Fourth Amendment, a property seizure occurs where "there is some meaningful interference with an individual's possessory interests in that property." *See Soldal v. Cook Cty, Ill.*, 506 U.S. 56, 61 (1992) (internal quotation omitted). But "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison

cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Nor does the Fourth Amendment apply when property is taken from an inmate's cell. *See id.* at 528 n.8 ("[T]he same reasons that lead us to the conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell, apply with controlling force to seizures."); *id.* at 538, 540 (O'Connor, J., concurring) (noting "[t]he fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects" and "the constitutional sources that provide [prisoners'] property with protection ... [are] the Fifth and Fourteenth Amendments not the Search and Seizure Clause of the Fourth Amendment"); *see also Conquistador v. Syed*, No. 3:19-CV-1450 (KAD), 2020 WL 229319, at *4–5 (D. Conn. Jan. 15, 2020) (items taken during prisoner's transfer did not implicate a Fourth Amendment seizure).

As a result, Mr. Baltas cannot base a Fourth Amendment claim on his property deprivation because he has not sustained a property seizure covered under the Fourth Amendment.

Accordingly, Mr. Batlas's Fourth Amendment claim of property deprivation will be dismissed as not plausible.

### D.    The Fourteenth Amendment Property Deprivation Claim

The Due Process Clause of the Fourteenth Amendment protects a plaintiff against the denial of a protected property interest without due process of law. *Ramos v. Malloy*, No. 3:18-CV-615 (VAB), 2018 WL 1936144, at *3 (D. Conn. Apr. 24, 2018). A prisoner can state a due process claim for loss of property if the state has not created adequate post-deprivation remedies. *See Edwards v. Erfe*, 588 Fed. App'x 79, 80 (2d. Cir. 2015); *Hudson*, 468 U.S. at 533 (1984). "The existence of state remedies, therefore, determines whether a Fourteenth Amendment claim

for deprivation of property without due process is cognizable in federal court." *Conquistador v. Hannah*, No. 3:19-CV-1293 (KAD), 2019 WL 4346346, at *4 (D. Conn. Sept. 12, 2019).

As a result, in challenging a property deprivation under the Fourteenth Amendment Due Process Clause, Mr. Baltas must avail himself of the adequate remedies guaranteed under state law rather than the Court.

The CT DOC provides inmates with an administrative remedy procedure for lost or destroyed property or complaints about staff misconduct. *See* A.D. 9.6. *See Ramos*, No. 3:18-CV-615 (VAB), 2018 WL 1936144, at *3 (noting CT DOC has established an administrative remedy procedure relevant to an inmate's lost or destroyed property and citing Directive 9.6(16)(B)). In addition, the State of Connecticut provides adequate post-deprivation remedies for property deprivation under Connecticut General Statutes § 4-141, *et seq.*, which enables a prisoner to bring a claim against the Connecticut Claims Commission, unless there is another administrative remedy for his claim. *See* Conn. Gen. Stat. § 4-142.

Accordingly, as the State of Connecticut provides adequate state court remedies, the Mr. Baltas's Fourteenth Amendment property deprivation claim is dismissed as not plausible.

### E.    The Fourteenth Amendment Classification Review Claim

Fourteenth Amendment procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (*per curiam*).

Mr. Baltas complains that he has been classified at RI DOC under restrictive classifications without process due under the Fourteenth Amendment.

14

For purposes of initial review, the Court assumes that Mr. Baltas has a liberty interest to support his due process claim. Due process requires that prison officials engage in periodic review of the administrative confinement, but it does not require that an inmate receive a hearing, be present, or provide statements for these periodic reviews. *Proctor v. LeClaire*, 846 F.3d 597, 609–12 (2d Cir. 2017) (quoting *Hewitt*, 459 U.S. at 476). In *Proctor,* the Second Circuit directed that a periodic review must provide a meaningful evaluation that considers recent conduct in determining whether valid institutional safety reasons justify continued segregation. *Id.* at 610–11. Prison officials cannot merely "go through the motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined in [administrative segregation] no matter what the evidence shows." *Id.* at 610. Such reviews are needed to ensure that segregated confinement is not pretextual. *Hewitt*, 459 U.S. at 477 n.9.

To the extent he alleges that he did not receive review required by Fourteenth Amendment for his classifications by the CT DOC Defendants, Mr. Baltas has raised a plausible Fourteenth Amendment procedural due process violation arising from the lack of meaningful, periodic reviews.

Accordingly, Mr. Baltas's Fourteenth Amendment procedural due process claims against the CT DOC Defendants in their individual capacities will proceed beyond initial review for further development of the record.

There are, however, no allegations to suggest that the CT AG Defendants have plausible involvement in Mr. Baltas's classification reviews.

Accordingly, Mr. Baltas's Fourteenth Amendment claims against the CT AG Defendants will be dismissed as not plausible.

### F.    The Religious Deprivation Claim

To assess a First Amendment free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice infringes upon the religious belief; and (3) whether the challenged practice furthers legitimate penological objectives." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)) (cleaned up). In the context of the Free Exercise Clause under section 1983, a plaintiff must establish liability of a defendant by showing that "an officer-defendant act[ed] with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice." *Id.* at 129.

Mr. Baltas alleges that he has not been able to practice his Native American Religion while confined at RI DOC. Compl. at ¶ 150. Mr. Baltas asserts that Defendants refused to take any curative actions after he notified them of his religious deprivations. *Id.* at ¶ 151.

Accordingly, for purposes of initial review, Mr. Baltas's First Amendment free exercise and RLUIPA claims will permit proceed against all the CT DOC Defendants and CT AG Defendants.[4]

---

[4] The Establishment Clause ensures that the government does not "coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion." *Muhammad v. City of New York Dep't of Corrs.*, 904 F. Supp. 161, 197 (S.D.N.Y. 1995) (internal quotation marks, brackets, and citation omitted). To the extent Mr. Baltas intends to pursue a claim under the First Amendment Establishment Clause, no allegations suggest that CT DOC or CT AG Defendants had any involvement in promoting or inhibiting inmate participation in certain religions at RI DOC's HSC.

G.        **The Fourteenth Amendment Equal Protection Claim**

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks omitted) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

A plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals are treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221–22 (2d Cir. 2012). Thus, Mr. Baltas may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Vill. of Mamaroneck*,

No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)), *aff'd*, 639 F. App'x 44 (2d Cir. 2016).

As Mr. Baltas's Complaint suggests he was deprived of access to his Native American religious practice by his transfer to HSC, the Court will permit him to proceed against the CT DOC and CT AG Defendants for class-based discriminatory treatment due to his Native American ethnicity and religion. Mr. Baltas's allegations, however, are too conclusory to permit his "class of one" claim against the CT DOC and CT AG Defendants to proceed. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Significantly, there is nothing in this Complaint to plausibly suggest how Mr. Baltas knows that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564 (citations omitted).

Accordingly, Mr. Baltas may proceed on his Fourteenth Amendment equal protection claims against the CT DOC Defendants and CT AG Defendants allegedly due to his Native American ethnicity and religion, but his "class of one" equal protection claim will be dismissed as not plausible.

### H.    The 42 U.S.C. § 1981 Claim

The purpose of § 1981 is "to protect from discrimination identifiable classes of people who are subjected to intentional discrimination because of their ancestry or ethnic characteristics." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Section 1981(a) prohibits "intentional racial discrimination" by public or private actors. *Brown v. City of Oneida*, 221 F.3d 329, 339 (2d Cir. 2000). To establish a claim under § 1981, a plaintiff must show that

the defendant discriminated against the plaintiff on the basis of race, that the discrimination was intentional, and that the discrimination was a "substantial" or "motivating factor" for the defendant's actions. *Tolbert v. Queens College,* 242 F.3d 58, 69–70 (2d Cir. 2001). A plaintiff bringing a Section 1981 claim must allege with specificity "circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). "Conclusory allegations" of racially motivated animus are insufficient. *Id.*

Consistent with the analysis above with respect to Mr. Baltas' Foureenth Amendment equal protection claim allegedly due to his Native American ethnicity and religion, the allegations in the Complaint are sufficient to allow the Section 1981 claim to survive initial review.

Accordingly, Mr. Baltas's Section 1981 claim against the CT DOC Defendants and CT AG Defendants due to allegedly intentional racial motivation will proceed.

## I.    The Access to Courts Claim

It is well established that inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Miller v. Semple*, No. 3:18-cv-01769 (JAM), 2019 WL 6307535, at *4 (D. Conn. Nov. 25, 2019) ("Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials."). To state a claim for denial of access to the courts, a plaintiff must demonstrate that he suffered an actual injury, *see Lewis*, 518 U.S. at 351–53—that is, he must allege that "defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court," *Baker v. Weir*, No. 3:16-cv-01066 (JAM), 2016 WL 7441064, at *2 (D.

Conn. Dec. 27, 2016) (quoting *Brown v. Choinski*, No. 3:09-cv-1631 (MRK), 2011 WL 1106232, at *5 (D. Conn. Mar. 23 2011)).

Mr. Baltas's Complaint alleges that his criminal and civil matters have been impeded and that he has been unable to prepare for his civil or criminal matters pending in Connecticut. Compl. at ¶¶ 120, 123. He asserts that his legal documents were withheld for three weeks after his transfer, that he was permitted only access to a limited materials and is denied access to digital or video materials, and that he has incurred difficulty communicating with his attorneys. Compl. at ¶¶ 112, 117, 122, 127. Mr. Baltas also claims that he has been unable to prepare his legal filings in his pending cases and has missed court dates. *Id.* at ¶¶ 120, 124-125. He has allegedly complained to all Defendants but their response is that RI DOC is responsible for facilitating his court access. *Id.* at ¶ 119. At this stage of the case, these allegations are sufficient.

Accordingly, Mr. Baltas's claim of court access deprivation against the CT DOC Defendants and CT AG Defendants will proceed for further development of the record.

**J.    The Effective Assistance of Counsel Claim**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI; *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625 (1989) ("[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds."). Under the Sixth Amendment, a criminal defendant is constitutionally entitled to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984) ([T]he Court has recognized that 'the right to counsel is the right to the effective assistance of

counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 71 n.14 (1970)). The Sixth

Amendment right to effective assistance of counsel "only applies to a defendant's trial and first

appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil

proceedings such as civil rights claims challenging prison conditions." *Bourdon v.*

*Loughren,* 386 F.3d 88, 96 (2d Cir. 2004) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 555-57

(1987)); *see also Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) (rejecting application of Sixth

Amendment to claim that "would insulate all mail from inspection, whether related to civil or

criminal matters").

　　　In the context of a criminal defendant inmate's access to counsel, the Second Circuit has

concluded that a restriction on a criminal defendant's contact with his or her attorney is

"unconstitutional where the restriction unreasonably burdened the inmate's opportunity to

consult with his [or her] attorney and to prepare his defense." *Benjamin v. Fraser,* 264 F.3d 175,

187 (2d Cir. 2001) (quotation and citation omitted).[5] "Examples of unconstitutional limits on

prisoners' rights to counsel include a ban on all visits by paralegals employed by criminal

defense counsel and repeated delays in meetings between prisoners and attorneys that resulted in

attorneys forgoing the meetings." *Schick v. Apker*, No. 07-CV-5775, 2009 WL 2016926, at *2

(S.D.N.Y. July 10, 2009) (citing *Smith v. Coughlin,* 748 F.2d 783, 789 (2d Cir. 1984);

*Benjamin,* 264 F.3d at 187). However, "states have no obligation to provide the best manner of

access to counsel" and "restrictions on inmates' access to counsel via the telephone may be

permitted as long as prisoners have some manner of access to counsel." *Bellamy v. McMickens*,

692 F. Supp. 205, 214 (S.D.N.Y. 1988). Thus, a denial of one method of communicating with an

---

[5] A plaintiff need not show "actual injury" to have standing for a Sixth Amendment claim. *Id.* at 184-187.

21

attorney does not give rise to a constitutional violation if the inmate plaintiff has another means of communicating with counsel. *See Lowery v. Westchester Cty. Dep't of Correction*, No. 15-CV-4577, 2017 WL 564674, at *3–4 (S.D.N.Y. Feb. 10, 2017); *Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at *7 (S.D.N.Y. Mar. 11, 2014) ("Because Groenow has not alleged that he was denied all opportunities to consult confidentially with his attorney, he has not plausibly alleged a Sixth Amendment violation" even though "monitoring telephone calls with his attorney most likely had a chilling effect on Groenow's ability to communicate effectively with his attorney."); *Schick*, 2009 WL 2016926, at *2 (prison officials' refusal to grant plaintiff's request for an unmonitored call with his criminal appellate attorney on' three occasions "did not 'unreasonably burden' his opportunity to consult with counsel and to prepare his appeal" where plaintiff had other means of access to his attorneys).

Because Mr. Baltas's allegations concerning his inability to communicate with counsel implicate Sixth Amendment concerns, the claim will survive for now.

Accordingly, Mr. Baltas's deprivation of his Sixth Amendment right to effective counsel claim against the CT DOC Defendants and CT AG Defendants will proceed for further development of the record..

### K.    The Speedy Trial Act Claim

The Supreme Court has explained that "[t]he speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker v. Wingo,* 407 U.S. 514, 522 (1972)). For these reasons, the Supreme Court has formulated a four-factor balancing test for evaluating a defendant's claim that his or her speedy trial right has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant

asserted his right in the run-up to the trial; and (4) whether the defendant was prejudiced by the failure to bring the case to trial more quickly." *United States v. Ghailani*, 733 F.3d 29, 42–43 (2d Cir. 2013) (quoting *United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012)).

Although "no single factor is dispositive and ... each serves to guarantee a fundamental, enumerated right of the accused," the Second Circuit has explained that "'[t]he length of the delay is to some extent a triggering mechanism, because until there exists some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018) (internal citations omitted).

Mr. Baltas alleges that the CT DOC Defendants failed to process his notice demanding enforcement for his speedy trial rights for pending criminal matters in Connecticut state courts. Compl. at ¶¶ 128-129. He claims that all Defendants again responded negatively to his second notice demanding his return to Connecticut and enforcement of his speedy trial rights for his pending criminal matters in Connecticut. *Id.* at ¶ 130. Thus, he alleges that his RI DOC confinement has resulted in deprivation of his speedy trial rights for his pending Connecticut criminal matters. At this stage of the case, these allegations are sufficient for them to proceed to discovery.

Accordingly, Mr. Baltas's Sixth Amendment claim of speedy trial deprivation against the CT DOC Defendants and CT AG Defendants will proceed for further development of the record. on his.

## L.    The Eighth Amendment Deliberate Indifference to Medical and Mental Health Treatment Claim

To state a cognizable Eighth Amendment claim for deliberate indifference to a prisoner's medical needs, the prisoner must show that "(1) objectively, the alleged deprivation of medical

care was 'sufficiently serious,' and (2) subjectively, that a defendant acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). The prisoner must allege facts to suggest that a defendant acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138.

Mr. Baltas alleges that the CT DOC Defendants acted with indifference to his medical and mental health needs by failing to ensure he received medical and mental health treatment for his known serious medical and mental health conditions, while confined in RI DOC. At this stage of the case, these allegations are sufficient to proceed past initial review as to the CT DOC Defendants in their individual capacities. But, because there are no plausible allegations regarding the involvement of the CT AG Defendants in Mr. Baltas's health care, any such claim against them will not proceed past initial review.

Accordingly, Mr. Baltas's Eighth Amendment deliberate indifference to his medical and mental health needs claim may proceed for further development only as to CT DOC Defendants in their individual capacities. Any such claim against the CT AG Defendants will be dismissed as not plausible.

### M.    The Treatment and Conditions in RI Claim

Mr. Baltas asserts multiple claims under 42 U.S.C. § 1983 about his treatment at HSC, including being subject to excessive force; excessive strip and cell searches; isolation, solitary

confinement, and twenty-four confinement; unsanitary and unhealthful confinement conditions; inability to access HSC's law library or legal resources; deprivations concerning his exercise, non-legally related visitation and communications, sleep, food, and educational and rehabilitation programming; and discipline without adequate due process. *Id.* at 33-55.

As previously noted, the personal involvement of a defendant in the alleged constitutional violation is an essential element of any claim brought under Section 1983. *See Tangreti*, 983 F.3d at 618. A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official[.]" *Id.* at 620. Thus, "a plaintiff must ... prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A defendants' "mere knowledge ... is not sufficient because that knowledge does not amount[ ] to the [defendant's] violating the Constitution." *Id.* at 616–17.

Here, the alleged facts do not support a claim that the CT DOC Defendants or CT AG Defendants were personally involved with the excessive force; excessive strip and cell searches; isolation, solitary confinement, and twenty-four confinement; unsanitary and unhealthful confinement conditions; inability to access HSC's law library or legal resources; deprivations with his exercise, non-legally related visitations and communications, sleep, adequate food, and educational and rehabilitation programming; and discipline without adequate due process. Mr. Baltas alleges that he wrote letters and grievances to the named Defendants asserting that he feared for his life but received no responses. Compl. at ¶ 141.

But "[a] defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement." *Alvarado v. Westchester*

*Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (citation omitted). Likewise, a failure to provide

redress based on notice after an alleged constitutional violation occurred does not state a

cognizable claim for section 1983 liability. *See Parker v. New York*, No. 22-CV-3170 (GRB)

(AYS), 2022 WL 2441215, at *4 (E.D.N.Y. July 1, 2022) (supervisor's failure to provide remedy

for violation complained of in grievance was not sufficient to establish supervisor's liability);

*Andrews v. Gates*, No. 3:17-CV-1233 (SRU), 2019 WL 2930063, at *8 (D. Conn. July 8, 2019)

(concluding supervisor's alleged notice after the fact of an isolated incident was insufficient to

support a constitutional claim). Thus, Mr. Baltas has not plausibly alleged constitutional claims

against the CT DOC or CT AG Defendants for constitutional violations at HSC arising from the

use of excessive force; excessive strip and cell searches; isolation, solitary confinement, and

twenty-four confinement; unsanitary and unhealthful confinement conditions; inability to access

HSC's law library or legal resources; deprivations concerning his exercise, non-legally related

visitations and communications, sleep, adequate food, and educational and rehabilitation

programming, visitation, sleep, adequate food, and educational and rehabilitation programming,

and discipline without adequate due process.

    Accordingly, any claim as to the treatment and conditions in the Rhode Island facility

brought against the CT DOC or CT AG Defendants will be dismissed as not plausible.

    **N.**    **The New England ICC Claim**

    Mr. Baltas complains that his RI confinement subjects him to conditions and disciplinary

procedures that would not be applied at a CT DOC facility. The New England ICC provides:

"The fact of confinement in a receiving state shall not deprive any inmate so confined of any

legal rights which said inmate would have had if confined in an appropriate institution of the sending state." Conn. Gen. Stat. § 18-102, Art. IV(e).

But violations of the ICC do not constitute violations of federal law, *Baltas v. Maiga*, No. 3:20CV1177 (MPS), 2021 WL 2206966, at *5 (D. Conn. June 1, 2021) ("[A] violation of the Connecticut Interstate Correction Compact does not constitute a federal claim under 42 U.S.C. §1983.") (citing cases); and on review, the Second Circuit affirmed on grounds of qualified immunity because no Supreme Court or Second Circuit case has addressed whether the ICC secures federal rights and no precedent clearly establishes that the ICC "is federal law," *Baltas v. Maiga*, No. 22-2895-pr, 2024 WL 4474409, at *2 (2d Cir. Oct. 11, 2024).

Accordingly, Mr. Baltas's claim against any Defendant under 42 U.S.C. § 1983 for a violation of his rights under the ICC will be dismissed as not plausible.

## O.    The ADA and RA Claims

The standards under Title II of the ADA and §504 of the RA "are generally the same[.]" *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).[6] The ADA and the RA both apply to state prisons and prisoners. *Wright*, 831 F.3d at 72.[7]

---

[6] The only difference between the ADA and Rehabilitation Act is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'" *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 272).

[7] "Neither Title II of the ADA nor § 504 of the RA provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). As to official capacity claims, the Court is aware that it is presently unsettled in the Second Circuit whether a plaintiff may assert a Title II ADA damages claim against a state actor in his or her official capacity, and, if so, under what circumstances such a claim can be maintained. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193–95 (2d Cir. 2015) (recognizing uncertainty, after the decision in *United States v. Georgia*, 546 U.S. 151 (2006), about the extent to which Congress validly

To establish a prima facie violation under Title II of the ADA or the RA, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72. There are "three available theories[]" of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009).

Mr. Baltas refers to conditions at HSC—such as the lack of hand rails—that he alleges are not compliant with the ADA. He does not, however, allege facts to describe how he was discriminated against because of a qualifying disability or was denied any opportunity to participate or benefit from services or programs because of that qualifying disability. He alleges that he is denied necessary medical and mental health services, but neither the ADA nor the RA "applies to claims regarding the adequacy or substance of services provided by correctional departments or provides a remedy for medical malpractice." *Reese v. Breton*, No. 3:18CV01465(VAB), 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020). "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs*., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010). As a result, Mr. Baltas has not alleged facts to support an inference he is being treated differently because of a disability.

---

abrogated state sovereign immunity under Title II and about the continuing validity of the Second Circuit's decision in *Garcia*, 280 F.3d at 111–12, on this issue).

Accordingly, Mr. Baltas's ADA and RA claims will be dismissed as not plausible.

**P.    The Civil Conspiracy Claims Under 42 U.S.C. § 1983, 1985, and 1986**

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) "To survive a motion to dismiss, a plaintiff must allege more than 'conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights.'" *Buari v. City of New York*, 539 F. Supp. 3d 356, 393–94 (2d Cir. 2021) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)). A plaintiff "'must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end,' as well as 'some details of time and place and the alleged effects of the conspiracy.'" *Id.* (quoting *Romer v. Morenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).

To state a claim for conspiracy under 42 U.S.C. § 1985(3) [8], a plaintiff must allege "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v.*

---

[8] Section 1985 has three subsections. Section 1985(1) relates to conspiracies to prevent federal officials from performing their duties and has no relevance to the facts of this case. Section 1985(2) concerns conspiracies intending to "any party or witness" from "attending court or from testifying" in order to "influence the verdict" of a case, and also has no relevance to the alleged facts. Section 1985(3) applies to conspiracies to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015).

29

*Connolly*, 794 F.3d 290, 296 (2d. Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d

Cir. 2006)). A § 1985 conspiracy must be motivated by "some racial or perhaps otherwise class-

based" discriminatory animus. *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778,

791 (2d Cir. 2007)).

Under 42 U.S.C. § 1986, a plaintiff can bring a claim against an individual who, "having

knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this

title, are about to be committed, and having power to prevent or aid in preventing the

commission of the same, neglects or refuses so to do." 42 U.S.C. § 1986. "Thus a § 1986 claim

must be predicated upon a valid § 1985 claim." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir.

1999).

Mr. Baltas alleges:

From Jan. 2023 to Oct. 2023 all named Defendants repeatedly met, conferred and/or
communicated and devised and created a transfer plan intended to cause the Plaintiff
intentional harms, emotional and psychological harms, and to deprive him of his
constitutional and legal rights as well as deny him access to court and counsel and moot
claims. These planned harms included but are not limited to: keeping his property in
Conn. denying him possession; mandating RI lock him in solitary confinement in their
supermax and impose the very conditions found to be unacceptable in Conn; denying him
communications and visitations; intentionally denying him access to his legal materials to
interfere with his ability to litigate against Conn. DOC, deny him religious access.

After Defendants devised their planned course[,] they repeatedly conferred and
communicated with RI Officials inclusive of, but not limited to the RI AG, RI DOC
Director, the RI DOC Assistant Director of Security and the RI DOC ICU Administrator,
wherein the Defendants expressed their desire to effectuate making Plaintiff's housing in
RI as miserable as possible and to effectuate raising barriers and interferences with his
ability to prosecute his civil actions against Conn. DOC officials to successfully
completion. The part[ie]s agreed to terms of how to accomplish these goals to fulfill the
Defendants desires and RI agreed to take such affirmative actions, inclusive of, but not
limited to holding Plaintiff in permanent solitary confinement, denying him his property,

denying him communications and associations, denying him religious access, raising interferences with his legal access and overall torturing him. In exchange the Defendants agreed to accepting 4 inmates from RI in exchange for Plaintiff.

Compl. at ¶¶ 88-89.

For his § 1983 conspiracy claim, Mr. Baltas provides no factual allegations that "reasonably lead to the interference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common or unlawful plan." *Buari*, 530 F. Supp. 3d at 394 (quoting *Gordon v. Emmanuel*, No. 15-cv-2439 (CBA) (SJB), 2018 WL 4688935, at *9 (E.D.N.Y. Sept. 28, 2018)). Instead, Mr. Baltas provides only conclusory allegations that Defendants "met, conferred and/or communicated and devised and created a transfer plan." Compl. ¶ 88. Such allegations are insufficient to plead a conspiracy claim under § 1983. *See, e.g.*, *Ciambriello v. Cnty. Of Nassua*, 292 F.3d 307, 324–25 (2d Cir. 2002) (affirming dismissal of §1983 conspiracy claims as "strictly conclusory" when plaintiff provided no factual allegations supporting the claim the defendants "agreed with" each other to violate his rights); *Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 294 (S.D.N.Y. 2019) (dismissing §1983 conspiracy claim when allegations were "conclusory" and insufficient to "suggest[] any 'meeting of the minds'").

For his § 1985 claim, Mr. Baltas has not alleged any racial or class-based discriminatory animus. Therefore, any conspiracy claims under this statute must be dismissed. *See, e.g.*, *Dolan*, 794 F.3d at 296 (affirming dismissal of section 1985 claim because plaintiff "failed to allege membership in a class protected under Section 1985(3)"); *Brady v. Friedlander*, No. 20-3515-cv, 2021 WL 5872264 , at *2 (2d Cir. Dec. 13, 2021) (affirming dismissal of Section 1985 claim when "[plaintiff] failed to allege that any of the Defendant-Appellees acted with 'invidiously

discriminating animus'"). In the absence of a valid § 1985 claims, any claim brought under § 1986 also fails. *See, e.g.*, *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) ("[W]e affirm the district court's dismissal of plaintiffs' § 1985(3) claims . . . [a]nd because 'a § 1986 claim must be predicated on a valid § 1985 claim,' plaintiffs' § 1986 claim was properly dismissed as well." (internal citations omitted)).

Accordingly, any conspiracy claims under Sections 1983, 1985, and 1986 will be dismissed as not plausible.

### Q.    Official Capacity Relief

Mr. Baltas asserts official capacity claims for declaratory and injunctive relief. Mr. Baltas has also filed an emergency motion for declaratory and injunctive relief. *See* Emerg. Mot. for Decl. and Injunct., ECF No. 4. To the extent he seeks monetary damages against Defendants (all state employees) in their official capacities, such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). Thus, "[a] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

"Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Toliver v. Comm'r Semple*, No. 3:16-CV-1899 (SRU), 2016

WL 7115942, at *3 (D. Conn. Dec. 6, 2016) (referencing *In re Combustion Equip. Assoc., Inc.*, 838 F.2d 35, 37 (2d Cir. 1988)). The exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). To the extent Mr. Baltas seeks a declaration that the acts and omissions by the defendants have violated his constitutional rights in the past, such request is not plausible. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* ... to claims for retrospective relief.").

Mr. Baltas has plausibly alleged being subject to ongoing constitutional violations arising from failure to review his classifications; disparate treatment; and deprivations of his speedy trial rights, access to courts and effective assistance of counsel; inability to engage in his religious exercise; and medical and mental health indifference.

Accordingly, the Court will permit him to proceed for official capacity relief to remedy ongoing Fourteenth Amendment procedural due violations, Sixth Amendment violations, Eighth Amendment indifference to medical and mental health needs, First Amendment and RLUIPA religious deprivations, and his court access deprivation.

Mr. Baltas may, however, only proceed on a claim for injunctive relief against a Defendant in his or her official capacity to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation. *See Scozzari v. Santiago*, 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019). Thus, the Court will permit Mr. Baltas to proceed on his official capacity claims against the CT DOC Defendants, who plausibly could provide him with relief for such ongoing deprivations.

As Mr. Baltas's emergency motion seeks an order for his return Connecticut so that he is relieved of constitutional infringement while confined at HSC, the Court will instruct the CT DOC Defendants to respond to his emergency motion regarding his requests for injunctive relief.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The case shall proceed on Mr. Baltas's claims for (1) First Amendment retaliation against Mr. Baltas by transferring him to HSC against the CT DOC Defendants (David Snyder, Jaclyn Osden, Sara Skribiski, Antonio Santiago, William Mulligan and Angel Quiros) and CT AG Defendants (William Tong and Terrance O'Niell) in their individual capacities; (2) Fourteenth Amendment procedural due process classification review violation against CT DOC Defendants in their individual and official capacities; (3) Fourteenth Amendment equal protection violation against the CT DOC Defendants and CT AG Defendants in their individual capacities and against the CT DOC Defendants in their official capacities; (4) violation of 42 U.S.C. § 1981 against the CT DOC Defendants and CT AG Defendants in their individual capacities and against the CT DOC Defendants in their official capacities; (5) First Amendment and RLUIPA violations based on religious exercise deprivations against the CT DOC Defendants and CT AG Defendants in their individual capacities and against the CT DOC Defendants in their official capacities; (6) deprivation of his constitutional right to court access against the CT DOC Defendants and CT AG Defendants in their individual capacities and the CT DOC Defendants in their official capacities; (7) Sixth Amendment effective assistance of counsel and speedy trial

violations against the CT DOC Defendants and CT AG Defendants in their individual and the CT DOC Defendants in their official capacities; and (8) Eighth Amendment deliberate indifference to medical and mental health needs against the CT DOC Defendants in individual and official capacities.

(2) All other claims are **DISMISSED** without prejudice.

The CT DOC Defendants are instructed to respond to Mr. Baltas's emergency motion regarding his requests for injunctive relief on or before **March 14, 2025.**

**Mr. Baltas has two options as to how to proceed in response to this Initial Review Order:**

(1) If Mr. Baltas wishes to proceed immediately **only** on the claims set forth above against the CT DOC and CT AG Defendants, he may do so without further delay. If Mr. Baltas selects this option, he shall file a notice on the docket on or before **March 14, 2025**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. If Mr. Baltas files this notice, the Court will begin the effort to serve process on the named defendants in their individual capacities as indicated above.

(2) Alternatively, if Mr. Baltas wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed in order to attempt to state a viable claim, he may file an Amended Complaint by **March 14, 2025**.

An Amended Complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.

If Mr. Baltas elects to file an Amended Complaint, this Initial Review Order addresses will not proceed to service of process on any defendant. Any amended complaint must allege concise facts in the body of any complaint under 42 U.S.C. § 1983 to describe how each defendant is liable for violation of his constitutional or statutory rights.

If the Court receives no response from Mr. Baltas by **March 14, 2025**, the Court will presume that Mr. Baltas wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Mr. Baltas will have to show good cause if he seeks to amend the Complaint in any manner in the future.

**<u>Changes of Address</u>.** If Mr. Baltas changes his address at any time during the litigation of this case, Local Rule 83.1 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Mr. Baltas must give notice of a new address even if he is incarcerated. Mr. Baltas should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Baltas has more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Baltas should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at New Haven, Connecticut, this 14th day of February, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE